IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER D. GREMLER,

          Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

OPINION AND ORDER

22-cv-27-slc

Plaintiff Christopher Gremler seeks judicial review of a final decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, denying his claim for disability insurance benefits (SSDI) under the Social Security Act. 42 U.S.C. § 405(g). Gremler contends that the administrative law judge (ALJ) who denied his claim failed to properly evaluate the medical opinions of state agency reviewing psychologist Robert Barthell, consultative examiner Dr. Jesse Frey, treating psychologist Dr. David MacIntyre, and treating nurse practitioner Gina Ramthun.

This is a claim that the ALJ could have decided in Gremler's favor, but he didn't. At this juncture, the court's role is limited to a deferential review of this adverse decision. Because I am not persuaded that any of the issues raised by Gremler warrant remand, I am affirming the Acting Commissioner's decision denying Gremler benefits.

**FACTS**

The following facts are drawn from the Administrative Record (AR) that was filed with the Commissioner's answer in this case:

On December 3, 2019, Christopher Gremler filed an SSDI application for a period of disability beginning on June 1, 2019, when he was 26 years old. AR 13, 24. After the Agency

denied Gremler's claims initially and on reconsideration, ALJ Jason Yoder held an administrative hearing on February 4, 2021. AR 13. In a written decision entered on February 17, 2021, the ALJ denied Gremler benefits. He determined that Gremler is severely impaired by generalized anxiety disorder, major depressive disorder recurrent and moderate, dependent personality disorder, panic disorder with agoraphobia, insomnia, and attention deficit hyperactivity disorder (ADHD). AR 15. In rating the severity of Gremler's mental impairments at steps 2 and 3 of the sequential evaluation process, the ALJ found that the evidence supported moderate limitations in all functional areas in light of his mental health treatment with mostly mild mental status examination findings. AR 16-17.

After finding that Gremler's impairments were not severe enough to meet or medically equal the criteria for a listed disability, AR 17, the ALJ found that Gremler retained the RFC to perform a full range of work at all exertional levels with the following mental limitations: concentrate, persist, and maintain pace for tasks in two-hour segments at a time; understand and remember simple instructions; carry out simple, routine, and rote tasks that require no more than occasional independent judgment or decision-making without stringent speed or strict hourly rate-based production requirements but he can have end-of-the-day goals; no more than occasional, if any, daily changes in a work task or work environment (i.e., a stable work setting); better suited to work in a task- or object-oriented setting as opposed to a service-oriented setting or working closely with people; and occasional, un-involved interaction with supervisors and co-workers, but no public interaction as part of his job duties. AR 18.

The ALJ considered various medical opinions related to Gremler's mental limitations in making the RFC assessment. Although the ALJ found the opinions of the state agency reviewing

psychologists (Drs. Jason Kocina and Robert Barthell) to be persuasive, he was not persuaded by the more extreme limitations assessed by Dr. Frey, Dr. MacIntyre, and NP Ramthun. AR 20, 22-23.

The ALJ summarized Gremler's subjective complaints, including that he finds it unbearable to work and be around others; he has left all of his jobs because of his depression, anxiety, and panic attacks; and he has poor concentration and trouble completing tasks and handling stress and changes in routine. AR 19. The ALJ determined that Gremler's medically determinable impairments could be reasonably expected to cause his alleged symptoms, but the ALJ was not persuaded that Gremler was as limited as he said he was. He cited Gremler's mostly mild mental status examination findings and overall functioning as reasons for not crediting his allegations of disabling symptoms. AR 20.

Relying on the testimony of a vocational expert, the ALJ found that Gremler could perform work in the representative occupations of laundry laborer, kitchen helper, and housekeeper/cleaner. AR 24. Therefore, the ALJ concluded that Gremler was not disabled at any time from his onset date through the date of his decision. The Appeals Council declined to review the ALJ's decision, making that decision the final decision of the Acting Commissioner for purposes of judicial review. AR 1.

**OPINION**

In reviewing an ALJ's decision, this court is limited to determining whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022) (noting substantial evidence is not high threshold: "[w]e will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and supports its conclusions with substantial evidence."). We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or he can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Under the regulations applicable to Gremler's benefits application, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (evaluating opinion evidence for claims filed after March 27, 2017). Instead, the "most important factors" in weighing a medical source's opinions now are supportability and consistency. § 404.1520c(b)(2). As for supportability, the regulations state: "The more relevant the objective medical evidence and supporting explanations presented

by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." § 404.1520c(c)(1). As for consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." § 404.1520c(c)(2). Finally, an ALJ may, but is not required to, explain how he considered the source's relationship with the claimant, specialization, and any other relevant factors. § 404.1520c(b)(1) and (2) and (c)(3)-(5).

As an initial matter, Gremler argues that the ALJ's discussion of the medical opinions was too cursory. According to Gremler, the Acting Commissioner's updated rules for evaluating medical evidence demand a greater level of articulation by ALJs than was required by the old rules. This court has rejected similar arguments in previous cases and I find the reasoning in those cases to be persuasive. *See Bakke v. Kijakazi*, No. 21-cv-178-bbc, 2022 WL 1537344, at *8 (W.D. Wis. May 16, 2022); *Leisgang v. Kijakazi*, No. 21-cv-40-bbc, 2022 WL 970151, at *8 (W.D. Wis. Mar. 31, 2022); *Steele v. Kijakazi*, No. 20-cv-987-bbc, 2021 WL 5881454, at *4 (W.D. Wis. Dec. 13, 2021).

The current regulation provides that ALJs must "explain how we considered the supportability and consistency factors" for a medical source's medical opinions and "may, but are not required to" explain how other relevant factors such as relationship with the claimant and length of the treatment relationship were weighed. *See* 20 C.F.R. § 404.1520c(b). As Judge Crabb noted in *Steele*, 2021 WL 5881454, at *4, "[t]he regulation says nothing about how detailed the ALJ's discussion must be, much less suggests that it must resemble a 'comparison

5

and contrast term paper,' as plaintiff argues in his brief."  Further, if anything, the new regulation seems to require a lower level of articulation than the Seventh Circuit required under the old rule.  *Leisgang*, 2022 WL 970151, at *8 (internal citation omitted); *see also Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (new regulations are "plainly less demanding than the former rules governing the evaluation of medical source opinions").

In any event, for the reasons below, I find that the ALJ has met the minimum articulation standard and has provided sufficient rationale for the weight given to the opinions of Dr. Barthell, Dr. Frey, Dr. MacIntyre, and NP Ramthun.  *See Bakke*, 2022 WL 1537344, at *8 ("Although I do not share plaintiff's view of the case law, I am persuaded that the ALJ in this case satisfied the articulation requirement of 20 C.F.R. § 404.1520c(a).").

**I.  Dr. Barthell**

In July 2020, state agency psychologist Dr. Barthell reviewed the record on reconsideration and found that Gremler had no limitations in understanding and memory and was capable of routine, unskilled work.  AR 95-97.  Dr. Barthell noted some moderate limitations in the following three categories of functioning:

> 1. **Sustained concentration and persistence**:  moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or near others, and maintain a consistent pace.  AR 95-96.  In the narrative section, Dr. Barthell noted that Gremler had a long history of isolation with increased anxiety around others, chronic insomnia leading to daytime fatigue, and recall of two out of four items after a delay.  AR 96.  Dr. Barthell also found that Gremler would have some difficulty working without distraction but would be able to carry out two- to three-step instructions at a reasonable pace.  *Id.*

2. **Social interaction**: moderate limitation in ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. AR 96. Dr. Barthell noted in the narrative section that Gremler's baseline level of anxiety was elevated and worse in public and that Gremler likes to seclude himself and isolate, especially when he is not feeling well. However, he found Gremler to be generally pleasant and likely to work well near, but perhaps not directly with, others. *Id.*

3. **Adaptation**: moderate limitation in ability to adapt to stress and change and best suited for a low-stress work environment. AR 96-97. In the narrative section, Dr. Barthell noted that Gremler responded well to medication but appeared to lack follow-through and a routine in his daily life. AR 97. He also stated that Gremler wanted to make changes in his life and learn new coping skills but struggled with accomplishing this goal. *Id.*

The ALJ found Dr. Barthell's opinion persuasive, noting that it was consistent with the mostly mild findings in Gremler's mental status examinations. AR 22.[1]

Gremler generally criticizes the ALJ for not showing sufficient support and rationale for his decision and for not citing medical evidence in discussing Barthell's findings. However, "[a]n ALJ is not required to cite specific treatment notes to reject a medical opinion." *Bickham v. Kijakazi*, No. 20-cv-1304, 2021 WL 7628191, at *3 (E.D. Wis. Dec. 27, 2021).

Although the ALJ's explanation was brief, he discussed Gremler's mental status examination findings in his evaluation of Gremler's subjective complaints. *See, e.g.*, AR 20 (citing AR 344 (Oct. 24, 2019 psychiatric evaluation noting "more down" mood and "constricted or

---

[1] The ALJ also stated that although he found the prior administrative medical findings from Dr. Kocina persuasive, he found those from Dr. Barthell more persuasive. AR 22 (citing AR 75-77, 95-97). Because Gremler's arguments only address the ALJ's evaluation of Dr. Barthell's opinion, I will not discuss Dr. Kocina's opinion.

somewhat flattened" affect but otherwise normal mental status); AR 290 (Oct. 28, 2019 mental status included depressed mood but otherwise normal observations); AR 348-49 (Nov. 21, 2019 physician note that mood was better, affect was constricted and somewhat flattened, but otherwise normal)); AR 21 (citing AR 450-52 (Mar. 10, 2020 therapy note of depressed and anxious mood but otherwise normal examination); AR 420-27, 441-42 (Apr. 14, May 22 and 28, and Jun. 4, 2020 notes of sad, depressed mood and poor confidence and self-esteem but otherwise normal examinations)); AR 22 (citing AR 461-62 (Aug. 11, 2020 note of increased and improved motivation, focus, and self-esteem with indifferent mood and otherwise normal examination); AR 482-85 (Jan. 7, 2021 note of moderate anxiety, improved energy and functioning, and normal examination)).  The ALJ was not required to repeat his discussion of the objective medical evidence when evaluating Dr. Barthell's findings.  *See Wedlow v. Colvin*, 2016 WL 4148342, at *15 (E.D. Wis. Aug. 4, 2016).  Moreover, Dr. Barthell reached his opinion after reviewing Gremler's mental status examinations between October 2019 and June 2020.  AR 92-93.

Gremler faults the ALJ for "not fully crediting the evidence which distracts from Dr. Barthell's opinion," dkt. 11 at 19-20, arguing that Dr. Barthell's opinion was not supported by or consistent with the other evidence of record for several reasons.  However, as discussed below, Gremler makes little attempt to explain why the why the ALJ's findings lack substantial evidence and he does not identify any evidence that the ALJ ignored.

First, Gremler contends that Dr. Barthell 's concentration, persistence, or pace (CPP) finding–namely, that Gremler would be able to carry out two- to three-step instructions at a reasonable pace–ignores Gremler's limitations in persistence.  In support, Gremler points out

that Dr. Barthell noted Gremler's lack of follow-through and a daily routine in discussing Gremler's adaptation limitations. However, apart from his general suggestion that some other persistence limitation would be appropriate, Gremler identifies no additional restrictions that would better translate Dr. Barthell's persistence-related findings. *See McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) ("McGillem does not state what (if any) further restrictions would be appropriate, or what evidence there is to support specific further limitations."); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (A claimant is not entitled to remand if he "does not identify medical evidence that would justify further restrictions."); *Bolin v. Saul*, No. 20-CV-348-JDP, 2021 WL 567899, at *5-6 (W.D. Wis. Feb. 16, 2021) (finding similar). Moreover, the ALJ reasonably accounted for Gremler's persistence and adaptation limitations by limiting him to concentrating, persisting, and maintaining pace for tasks in two-hour segments at a time; understanding and remembering simple instructions; and a stable work setting requiring no more than occasional, if any, daily changes in a work task or work environment. Gremler has not persuasively argued that the ALJ erred when translating Dr. Barthell's findings in the RFC.

Second, Gremler claims without additional support or explanation that Dr. Barthell's statements that Gremler had a long history of isolation and increased anxiety around others require more than moderate limitations in CPP and interacting with others in the workplace. The ALJ was entitled to accept the conclusions that Dr. Barthell drew from the evidence. *See Flener v. Barnhart*, 361 F.3d 442, 447-48 (7th Cir. 2004) ("It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability

9

evaluation."). In addition, the statements made by Dr. Barthell do not mean that Gremler had more than moderate limitations in these functional areas.

As Gremler acknowledges, the term "moderate" is defined by the regulations to mean "fair," 20 C.F.R. Pt. 404, Subpt. P, App. 1, and "'fair' in ordinary usage does not mean 'bad' or 'inadequate.'" *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). Therefore, moderate limitations in CPP and interacting with others are not necessarily inconsistent with Dr. Barthell's opinion that Gremler be limited to routine, unskilled work[2]; carrying out two- to three-step instructions at a reasonable pace; working near but perhaps not directly with others; and a low-stress work environment. Moreover, the ALJ reasonably accounted for all of Gremler's moderate CPP, adaptation, and social interaction limitations in the RFC. The ALJ's CPP and adaptation

---

[2] POMS DI 25020.010B.3 defines the requirements for unskilled work as:

a. Remember work-like procedures (locations are not critical).

b. Understand and remember very short and simple instructions.

c. Carry out very short and simple instructions.

d. Maintain attention for extended periods of 2-hour segments (concentration is not critical).

e. Maintain regular attendance and be punctual within customary tolerances. (These tolerances are usually strict.) Maintaining a schedule is not critical.

f. Sustain an ordinary routine without special supervision.

g. Work in coordination with or proximity to others without being (unduly) distracted by them.

h. Make simple work-related decisions.

i. Complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (These requirements are usually strict.)

j. Ask simple questions or request assistance.

k. Accept instructions and respond appropriately to criticism from supervisors.

l. Get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes.

m. Respond appropriately to changes in a (routine) work setting.

n. Be aware of normal hazards and take appropriate precautions.

limitations are discussed above. With respect to interacting with others, the ALJ stated that Gremler: (1) would be better suited to work in a task- or object-oriented setting as opposed to a service-oriented setting or working closely with people; and (2) can have occasional, un-involved interaction with supervisors and co-workers, but should not have any public interaction as part of the job duties. Even if the record could support more limitations, Gremler has failed to show that anything "compels them." *Delong v. Saul*, 844 F. App'x 894, 900 (7th Cir. 2021).

Third, Gremler argues that Dr. Barthell's opinion is unreliable because he was unable to review evidence submitted after he issued his findings: a November 2021 opinion from Gremler's treating psychologist, Dr. David MacIntyre; and treatment notes from Gremler's treating psychiatrist, Dr. Fabio Catao, beginning in October 2020 (*see* AR 482-87, 508-13, 530-38). However, apart from arguing that Dr. Barthell did "not have much access to much of the evidence at the hearing level," Gremler fails to explain how either Dr. MacIntyre's opinion or Dr. Catao's treatment notes would have changed Dr. Barthell's findings. *See Keys v. Berryhill*, 679 F. App'x 477, 480-81 (7th Cir. 2017) (ALJ did not err in relying on state agency doctor opinions even though they did not review two later spinal MRI reports because the claimant did not show that the reports would have changed the doctors' opinions). "If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Id.* at 481.

In any event, as discussed below, the ALJ reviewed Dr. MacIntyre's opinion and stated good reasons for not finding it persuasive. He also referred to Dr. Catao's January 7, 2021 mental status examination that noted Gremler's moderate anxiety but improved energy,

11

functioning, sleep, and medication compliance, along with otherwise normal findings. AR 22 (citing AR 482-87). Without more, Gremler cannot show that Dr. MacIntyre's opinion or Dr. Catao's treatment notes would have changed Dr. Barthell's opinion.

Finally, Gremler argues that Dr. Barthell's findings were not consistent with the examination findings of consultative examiner Dr. Jesse Frey, who opined that Gremler had several marked and extreme limitations in the areas of social functioning and adaptation. However, both Dr. Barthell and the ALJ specifically considered Dr. Frey's one-time examination and rejected his assessment. Dr. Barthell reviewed Dr. Frey's report and medical opinion, cited portions of it, and explained that it "partially persuasive at most" because it was not consistent with other relevant evidence. AR 94-95. The ALJ also considered Dr. Frey's findings and stated well-founded reasons for rejecting them, as discussed below. AR 20-21. Gremler has not cited any authority to support his suggestion that Dr. Barthell's opinion had to be consistent with every piece of evidence to be persuasive.

## II. Dr. Frey

After examining Gremler in January 2020, Dr. Frey found that Gremler had no limitations in his ability to understand, remember, and carry out simple instructions but had moderate CPP limitations, marked limitations in the ability to respond appropriately to coworkers and supervisors and withstand routine work stress, and extreme limitations in his ability to adapt to changes. AR 367. The ALJ was not persuaded by this opinion because he found it inconsistent with Gremler's history of mostly mild mental status examination findings. AR 20-21. In particular, the ALJ found Frey's one-time examination findings inconsistent with

Gremler's "formal mental health treatment with different providers . . . throughout the period of adjudication." AR 21.

Gremler argues that the ALJ failed to consider the supportability of Dr. Frey's opinion under 20 C.F.R. § 404.1520c(c)(1), pointing to the ALJ's own summary of Frey's mental status examination: "[T]he claimant appeared anxious, and often had a 'deer in the headlights appearance.' His mood was anxious and depressed. He reported difficulty falling asleep. Evidence of anhedonia was noted." AR 20. However, the ALJ reasonably explained that Frey observed Gremler during a one-time examination and those findings were inconsistent with Gremler's presentation throughout his overall mental health treatment. *See* 20 C.F.R. § 404.1520c(c)(3) (ALJ can consider medical source's relationship with claimant, including purpose of relationship and number of examinations).

Gremler also faults the ALJ for not considering other supporting evidence provided by Frey, including diagnoses of dependent personality disorder, agoraphobia, and major depressive disorder that cause "a low tolerance for distress" and social avoidance that "will prove difficult to treat." AR 367. However, the fact that the ALJ did not recite these specific findings does not mean that he did not consider them. The ALJ found that all of these diagnoses were severe impairments and included limitations related to social interaction and a stable work environment in the RFC. Further, a diagnosis is not itself sufficient to show a disability. *See Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007) ("[T]he existence of these diagnoses [including diabetes] and symptoms does not mean the ALJ was required to find that Skinner suffered disabling impairments."); *Fink v. Kijakazi*, 2021 WL 3674338, at *2 (W.D. Wis. Aug. 19, 2021) (finding same). Notably, the state agency psychologists considered Dr. Frey's full report and found his

13

limitations for Gremler to be too extreme given the other evidence of record. AR 75, 94-95. Although Gremler disagrees with the ALJ's decision to credit the findings of the state agency psychologists over Dr. Frey, the ALJ was entitled to rely on their opinions. *See Apke v. Saul*, 817 F. App'x 252, 256 (7th Cir. 2020) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001)) ("When [examining] and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision.").

Gremler also claims that the ALJ violated 20 C.F.R. § 404.1520c(c)(2) by overlooking an entire line of evidence from his treating providers (MacIntyre and Ramthun) that is not consistent with the ALJ's conclusions. However, "the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021); *see also Fetting v. Kijakazi*, 2022 WL 873172, at *6 (E.D. Wis. Mar. 24, 2022) ("The ALJ provided an adequate explanation for his findings;" he "was not required to find the opinions of Dr. Frodin persuasive based on their purported consistency with other opinions that he found were not persuasive, given their inconsistency with the overall record." ). As explained below, the ALJ discussed the opinions of MacIntyre and Ramthun and provided well-founded reasons for not finding them persuasive.

Finally, Gremler contends that because Dr. Frey is a consultative examiner, the court should "take notice and await a good explanation for this unusual step." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Although "examining sources are *generally* given more weight, the regulations do not say that their opinions must *always* be credited. *Balsewicz v. Berryhill*, 2018 WL 2290714, at *10 and n. 13 (E. D. Wis. May 18, 2018) (emphasis in original) (also finding that plaintiff cited no authority requiring ALJ to adopt findings of consulting examiner hired by

14

agency and noting that "[n]ot even treating sources receive such deference"). The ALJ in this case adequately explained why Dr. Frey's opinion was neither supported by, nor consistent with, the evidence of record.

### III. NP Ramthun

Nurse Practitioner Ramthun treated Gremler for general health issues between November 2017 and May 2020. *E.g.*, AR 300-02, 307, 318-37, 361, 372-88, 548-51. On October 9, 2019, she filled out a "Medical Exemption from Work Requirement" form certifying that Gremler was unfit for employment and should be exempted from any Wisconsin Department of Health Services work requirement. AR 473. And on December 31, 2019, Ramthun wrote a general letter stating that she has been actively treating Gremler for the diagnoses of anxiety, depression, and inability to interact with others and that these medical conditions "currently" make him unable to function in a work setting. AR 361. The ALJ did not find either opinion persuasive because neither gave a function-by-function assessment of Gremler's abilities and the determination of disability is an issue expressly reserved to the Commissioner. AR 22.

Gremler argues that the ALJ cannot simply ignore the opinion of a treating provider who believes he is unable to work. He suggests that the ALJ should have evaluated how Ramthun's treatment notes supported her opinion, in accordance with SSR 96-5p (how agency considers medical source opinions). *See, e.g.*, AR 382 ("Patient is a pleasant 26Y male who presents for feelings of malaise and fatigue, approximately 100-pound weight gain over the past year. He has a lot of psychiatric issues."); AR 560 ("He is currently not working due to his mental health issues. He is treated for anxiety, depression, ADHD.").

15

However, SSR 96-5p was rescinded as of March 27, 2017, along with the "treating source" rule and other associated policy statements. Under the current regulations applicable to Gremler's application, the ALJ had no obligation to provide an analysis about evidence that is neither valuable nor persuasive, which includes statements on issues reserved to the Commissioner. 20 C.F.R. § 404.1520b(c)(3); *see also* 20 C.F.R. § 404.1513(a)(2)(i)-(iii) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" specific abilities related to work (walking, understanding, remembering, etc.).). Here, the ALJ reasonably concluded that Ramthun's conclusory statements that Gremler is "unfit for employment" and "unable to function in a work setting" constituted statements on issues reserved to the Commissioner that did not require further analysis. *See* § 404.1520b(c)(3)(i) (includes statements that claimant is not able to perform regular work); *Nicholas M. v. Saul*, 2021 WL 753558, at *3 (C.D. Ill. Jan. 19, 2021) (ALJ did not err by disregarding two letters from doctor stating that claimant "cannot perform work" because they were not medical opinions and were "neither valuable nor persuasive").

## IV. Dr. MacIntyre

At the recommendation of Ramthun, Gremler saw Dr. MacIntyre, a psychologist, on March 10, 2020 for help with anxiety, depression, and ADHD. AR 450. Gremler attended regular psychotherapy sessions with MacIntyre between April and December 2020. AR 420-49 and 457-70. On January 19, 2021, Dr. MacIntyre completed a medical source statement, finding that Gremler was seriously limited in his abilities to remember work-like procedures;

16

maintain attention for two-hour segments; maintain regular attendance and be punctual; ask simple questions or request assistance; deal with normal work stress; set realistic goals or make plans independently of others; and interact appropriately with the general public. AR 475-80. He also noted that Gremler suffered drowsiness from medications, had significant fatigue that limits his ability to function socially and occupationally, and would be absent from work more than four days per month. The ALJ did not find this opinion persuasive, stating that it was unsupported because MacIntyre did not adequately explain his extreme limitations, and that the opinion was inconsistent with the record evidence showing mostly mild mental status examination findings. AR 23.

Gremler states that the ALJ's analysis was inadequate. In support, he cites *Madden v. Kijakazi*, 2022 WL 611548, at *6 (W.D. Wis. Mar. 2, 2022), in which Judge Crabb found the analysis of a therapist's opinion inadequate because the ALJ failed to explain why he found the claimant's ability to drive and complete serial three subtraction exercises inconsistent with the therapist's opinion even though the therapist had treated the claimant for many years. Gremler argues that the ALJ should have considered the fact that Dr. MacIntyre saw Gremler 15 times before providing an opinion and stated findings in his 2021 statement to support his opinions, including Gremler's GAF score (60 or below for one year), diagnoses (generalized anxiety disorder, ADHD, and major depressive disorder), and clinical symptoms (distracted, spotty remote memory, isolation, pervasive loss of interest in almost all activities, flat or inappropriate affect, feelings of guilt or worthlessness, impairment in impulse control, mood disturbance, and change in personality). *See* AR 475-76. Gremler also points to three treatment notes that he says the ALJ should have considered as support for Dr. MacIntyre's opinion. *See* AR 451-52

17

(March 10, 2020 note of Gremler's hospitalization 2.5 years ago after having suicidal thoughts; depressed and anxious mood upon examination; past diagnoses of ADHD, GAD, and major depression by Ramthun; and new diagnosis of generalized anxiety disorder); 441 (April 2020 note that Gremler last reported feeling better but appeared depressed and anxious during this session, reporting significant feelings of failure); and 459 (June 2020 note that Gremler seemed unmotivated to move forward and symptoms warranted weekly treatment).

However, unlike in *Madden*, the ALJ in this case cited more than two insignificant issues that were inconsistent with MacIntyre's opinion. As discussed in conjunction with Dr. Barthell's opinion, the ALJ reviewed the treatment notes from several providers in his decision and summarized the largely mild mental status findings, including those made by MacIntyre in 2020. Although Gremler expressed a sad, anxious, and depressed mood in the visits he cites, MacIntyre also noted that during those same visits, Gremler had congruent affect, normal concentration, judgment, and insight, and an average intellect. AR 420-22, 450-52. In addition, even though Gremler's symptoms warranted a change in treatment in June 2020, by August 2020, he was more motivated that he had been when on stimulant medication, he had a job interview, and he was going to the gym with a friend. AR 461-64. Gremler continued to report a depressed and anxious mood to MacIntyre through December 2020, but MacIntyre noted at each visit that Gremler was oriented and alert with intact functional status, appropriate affect, and interactive interpersonal skills. AR 465-69. Therefore, the ALJ reached a reasonable conclusion that the extreme limitations assessed by MacIntyre were not consistent with or supported by Gremler's mental status examinations. Moreover, Dr. Barthell also reviewed Dr. MacIntyre's findings through June 2020 and did not agree with MacIntyre's more extreme limitations.

Gremler points to the diagnoses noted by MacIntyre, but the "need for restrictions cannot be inferred from the diagnosis alone." *McGillem v. Kijakazi*, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022). The same is true for GAF scores. The ALJ correctly pointed out that GAF scores are a subjective assessment of a claimant's current level of functioning and provide no indication of an overall level of functioning over an extended period. Gremler argues that the fact that his GAF score never got above 60 for a year is telling. Although this may be relevant, it does not in itself provide a basis for remand. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (noting GAF score does not reflect an opinion about functional capacity and a low GAF score by itself is not sufficient to overturn ALJ's finding of no disability). In fact, an overall GAF score is dependent on separate assessments of symptom severity *and* social, occupational, and school functioning, and a GAF of 51 to 60 reflects moderate symptoms or moderate difficulty in functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (4th ed., Text Rev. 2000) (DSM-IV-TR). This is consistent with the ALJ's assessment that Gremler had moderate limitations in all four main areas of functioning. *See* AR 16-17.

## V. Conclusion

As noted at the outset, on this record, the ALJ could have found Gremler disabled. But Gremler has not shown that the ALJ committed reversible error in evaluating the opinions of Barthell, Frey, MacIntyre, and Ramthun. The ALJ considered the evidence favorable to Gremler evidence and gave valid reasons for reaching a different conclusion, which is all the ALJ was required to do under the deferential standard of review. The fact that a different fact-finder could have weighed the evidence differently does not make the decision erroneous. *Schloesser v.*

*Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017); *Kolar v. Berryhill*, 695 Fed. Appx. 161, 162 (7th Cir. 2017) ("Almost any conclusion an ALJ reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence."). Accordingly, the court will affirm the ALJ's decision.

## ORDER

IT IS ORDERED that the that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff Christopher Gremler's application for disability benefits, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 23rd day of February, 2023.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge